I submit your honor that the Collins case is not controlling, in this case before the court, and the main reason is because in Collins the prosecutor passed the comparative analysis test, while in the instant case he didn't. In this case, the prosecutor struck the Gloria M., the sole remaining black juror in this case, because as he said, teachers, social workers, and eligibility workers do not sit on the jury. He didn't say eligibility workers. He didn't say eligibility workers. He said teachers and social workers. And eligibility. No. That's my understanding of the record. He struck eligibility workers, but he didn't say that specifically in that little phrase that he used. I don't think. My recollection, I could be wrong, but it's my recollection that he classed all three individuals, because he went on to say, after he listed the people whose occupations he found unsuitable to sit on a jury, he then went on to say that Gloria M. is an eligibility worker and a teacher. Right there. He said she was a social worker and an eligibility worker. Isn't the understanding that he is understanding an eligibility worker to be a social worker? That's my understanding of what they're saying. An eligibility worker meaning eligible for welfare, that's a social worker. That's their assumption here. Yes, they're equivalent. If you divide up the category of teachers from the category of social workers, the reason given is completely borne out by a comparative analysis. There were three loosely defined social workers, all of whom were struck, one of whom was African American, the other two of whom were not. And nobody in that category ended up serving on the final jury. So insofar as the prosecutor said, I don't want social workers on the jury, that was 100% borne out by a comparative analysis. When you get to teachers, it's murky. It's not correct. But all of those teachers about whom he was inconsistent were white. But if you just look at the category of social workers, I don't understand why that isn't a permissible explanation. Well, I'm just relying on what the prosecutor said. Right. But insofar as it's relevant to this person, it was true. She was in this broad category of social worker, and everybody in that broad category was struck from the jury. Yes, Your Honor. The way I interpret what the prosecutor said is he lumped teachers, social workers and eligibility workers in the same category of people who he didn't want on the jury. And at the same time, he left three white individuals who had occupations that were connected to the teaching profession. And as such, this was a discrepancy that was noticed by the trial judge because he went on to offer another reason, a substitute reason to support the strike. He said that the strike failed to show a pattern indicating that more than one black person had to be struck from the panel in order to show a racially motivated reason for the strike. I suppose if we look at the credibility of his statement that he would strike all teachers and social workers and see that he in fact didn't strike all teachers, perhaps one might argue that that gave rise to a belief that his statement might be pretextual in whole and not just in part. Yes, that's the point that we're trying to convince the court of, that it was pretextual. What is our standard of review here? Well, the prosecutor's reasons for the strike are reviewed de novo. The trial judge's. But wait a minute. How does it fit into this box here? Do we have? How does the case, the statute fit into our review situation here? OK, I didn't understand what the court. I don't even know what the terrorist, whatever statute. Well, that particular statute, I think, is interpreted by the courts like the Collins case and Batson, or rather what came before. But basically, if the court is talking about the standard of review, and Collins goes into this fairly detailed analysis, states that the prosecutor's reasons have to be reviewed de novo, but the court's factual findings, which include whether or not the prosecutor was credible, are reviewed for clear error. But the California Court of Appeals said that the prosecutor's explanation for this juror was that she was a social worker, and that social workers aren't favorable to the prosecution, and that that was borne out by the record. So for us to reverse, I guess this is my problem, for us to reverse, we would have to be able to conclude that the California Court of Appeal was unreasonable, either factually or legally, in concluding that that was, in fact, the prosecutor's reason. And to me, that's a very high hurdle. Yes. Well, I submit the facts in this case are really not in dispute, because the record is clear as to just what the prosecutor said when he struck these. Yes, but the ultimate fact is the fact of whether or not the prosecutor was doing this because she was black or not because she was black, and that's a fact. So the question is whether, in light of the fact that, for example, the Supreme Court seems to have said that it wasn't going to credit a comparative analysis, the appellate court will not reassess good faith by conducting its own comparative juror analysis, and at least the more recent Supreme Court and Ninth Circuit cases seem to do that. The question is whether this, the Court of Appeal's opinion was applying an erroneous standard, and therefore, we don't know a difference. This is an important question here, as Judge Graber says. What is our standard? Well, in judging the credibility of the trial judge has to evaluate the credibility of the prosecutor's strike, and that is a question of fact, which is reviewed for clear error. But my point is... Now, it's viewed, if we view it under AEDPA, it's viewed for an unreasonable application rather than for clear error. So the question is what are we doing here? Well, that goes on. The ultimate issue is whether or not the courts made an unreasonable, whether the court's determination of the facts was unreasonable. And I submit it was, because he had to, he had to, because he evaluated the prosecutor's credibility by an improper legal standard. He said you have to show a pattern of strikes, which is untrue, and then the court, which is no authority for that proposition, then the Court of Appeal went on to give another reason to support the strike, saying that, well, and this has really convoluted the argument. The reason the Court of Appeal gave, because it seemed the court was trying to show that Lori M. was not struck because of her race, but because she was a liberal. Like teachers are supposed to be liberal and eligibility workers and social workers. So the court went on to say, well, the three white teachers who weren't struck had spouses who were conservative. One was a cowboy, one was an older person, and another was a farmer. So this is, I submit, the court was going out of its way to support the strike, which is contrary to the Miller L. case, which held that courts are, have no, do not have the obligation to support a strike. That if the racial nature of the strike fades, it's not up to the court to imagine a reason which would support the strike. But with respect to social workers, was I correct or incorrect in the observation that all three people who could loosely be called social workers were, in fact, stricken from the jury? Is that a correct understanding of the record? Well, actually, only one, we're only talking about Gloria M. Well, I know, you asked, but in your briefing you asked us to look at everybody else to see whether a comparative juror analysis would have yielded the same result. So I'm asking whether or not I'm right that two whites who were in, more or less in that category were also struck. Three of them, actually. Three, okay. One was Hispanic, and he worked for Social Security. It's not clear what he did. He could have swept the floors, for all we know. I think, isn't that right? I'm sorry, could I ask one other question? Sure. What would you say to an evidentiary hearing? If we were to send it back for an evidentiary hearing, what would Mr. Love do? Well, we also asked for an evidentiary hearing, because the trial judge, as the magistrate... Right, but what would he do at the evidentiary hearing? What would be presented? Well, he would, you see, the judge did not ask the prosecutor, why did you leave three teachers on the panel, after saying that you don't want teachers to sit on it? So you would call the prosecutor and ask him those questions and evaluate his credibility? Is that what you would do? Yes, we would like to have an explanation for the prosecutor for this discrepancy. Thanks. And if there are any more questions, I would request to reserve the time for a rebuttal, if I have any. You don't, but we'll give you a little bit back, because we asked a lot of questions. Mr. Raglin? May it please the Court, Charles Raglin, Deputy Attorney General for Respondent Scribner. Rice v. Collins does control this case, and factually the cases are similar. In Rice v. Collins, the prosecutor said he excused an African-American juror because she was young. The trial court said that's true, he struck another juror that was white who was young. In this case, the prosecutor said he excused Gloria M. because she was a social worker and eligibility worker. No, but see, that isn't what he said, which is why it's an interesting problem. He said, excuse me, he said, I strike teachers and social workers. So he had an explanation which was a little broader than the one that you're stating. And then that, you know, that's what he said. So that explanation was not true. So the question is, do we then look to what he said, or do we look to what he did? Well, his full statement is broader than the statement I made. But when he justified his strike, he said, I struck Gloria M. because she is a social worker and an eligibility worker. He then went on to explain that under his personal jury selection practices, he generally does not let social workers and teachers. He didn't say generally. He said never. They don't sit on the jury. Well, he said social workers and teachers don't sit on the jury. And when you look at his strikes, he did strike all of the three social workers. Well, that's true. But isn't this a pretext inquiry to see whether his actual explanation, as opposed to one we could dream up, was such that you believe that he wasn't doing it for a discriminatory reason? We can dream up a reason, i.e. that he struck consistently all social workers. But that wasn't his explanation. That was his explanation, was that he struck her because she was a social worker. And all of the other social workers had been struck. He also said that his practice was to exclude both social workers and teachers. Some teachers were struck from the jury. One teacher made it on to the jury. You can look at this other, his other more broad explanation and see, did he really strike all teachers? And he didn't. There was one allowed, and he didn't. But as the Court of Appeal found, that particular teacher may have other qualities that were more appealing to him. There were more than one allowed. I think there were three, at least two. Three that you could say were connected to the teaching profession. There was only one teacher allowed. One was an instructional aide, and the other was a teacher's aide. She worked at a school, much like the other person worked at the Social Security Administration. We don't know what either did. I'm curious about the sort of post hoc reasoning of the teachers, husbands might have been conservative farmers and so on. If we look at this eligibility worker whose brother-in-law worked as a, if I'm understanding this right, her brother-in-law worked as a guard at the same prison where the victim guard was assaulted. And if we think of a hypothetical juror that we might want as a prosecutor on a case of assault of a guard at a prison, and we had someone whose brother-in-law was a guard at the prison, I mean, the defense would strike the person for sure. But can you think of another reason that a prosecutor would strike such a person? Sure. In this case, they actually questioned her about her family relationships. She had a brother-in-law who worked at Calipatria State Prison, the same prison where the crime occurred here. But that brother had never encountered any safety problems at the prison. That would be a reason for a prosecutor to not want that person as compared to other jurors who could be on the jury. If her brother-in-law never had a problem, why did this particular victim in this case have a problem with the inmate? So it cuts both ways. Is it true that under Miller L. and Kessler, for example, that while we do a comparative analysis with regard to the reasons that the prosecutor gave, we don't do a comparative analysis, we don't make up reasons that the prosecutor might have given? So the whole endeavor of the California Court of Appeals is an erroneous standard here. They're not supposed to be doing that, and we're not supposed to be engaging in it. They're not making up reasons for the prosecutor. They were making up reasons with regard to this notion about why they left the teachers on the jury, as opposed to her. Their point was, even if he says he does not allow teachers to sit on the jury, and a teacher ends up on the jury, there may be other reasons that outweigh that factor. Right, they're making up reasons. Right, and they were giving an example. And for this particular teacher, she also had prior jury experience in a criminal case. Well, at a minimum here, if this was going to go on, we would have to have an evidentiary hearing, right? Because this is where the trial judge cut off the defendant and did not allow him to make these inquiries. If we want to figure out why the teachers were not allowed on the jury, we have to ask the prosecutor. We can't make up the reasons, and we can't credit the court of appeals made up reasons either. You don't have to hold an evidentiary hearing. The whole jury selection transcript is in the supplemental excerpts of record. You know all of the other jurors' information. You know everything that was before the prosecutor. We don't know why he left these teachers on after saying he didn't let teachers on. We don't know that. Right, you don't know that, but you don't need to know that. The only question is, was the trial court reasonable in accepting the prosecutor's explanation as race neutral? And here, the court of appeal found that the trial court was reasonable in believing the prosecutor's reason. What is our standard of review, in your opinion? Under AEDPA and under Rice v. Collins, the standard of review is whether the trial court's crediting of the prosecutor's race-neutral explanation was reasonable. Even if you disagree with it, but other reasonable people could agree with it, then you have to affirm in this case. If it's a debatable question, you have to affirm under Rice v. Collins and AEDPA. What if the trial court didn't conduct sufficient inquiry and, in fact, cut off the inquiry into things that would be relevant to determine whether the prosecutor's statement was pretextual or not? That would be a separate question, but in this case, the trial court did not cut off any questioning. Of course he did. He said he definitely did. The defendant said, I want to know why he left these teachers and social workers, teachers on the jury, and he said, I'm not going to ask him that, and he didn't. No, that's not what happened. The defendant didn't say, I want to know why he left teachers on. The defendant just pointed out that other teachers were left on the jury. He didn't ask for a further hearing as to why the prosecutor did that, and the trial court never stated that he wouldn't ask the prosecutor a particular question. The prosecutor gave his explanation. The defendant pointed out that that wasn't entirely true as far as other people left on the jury, and the trial court made its ruling. There was never a request for an additional questioning of the prosecutor. And we have to remember that in jury selection, you have, I mean, you're excluding jurors. You're not picking jurors. So even if you set out to exclude all teachers, you have a limited number of strikes. You may not be able to accomplish that. He did not use all his strikes, did he? No, he did not use all of his strikes. And on the selection of the alternates, sort of an odd thing happened where there was an alternate, three possible alternates, and the third was a teacher, and the second was not a teacher, and the prosecutor struck the second alternate, which meant that the third alternate became the alternate, and that alternate was a teacher. No, it was the other way around. The first alternate was a teacher, and that alternate was struck by the defendant. The defendant was representing himself in this trial. The second person was struck by the prosecutor, and then the third person who made it onto the jury was not a teacher. The first alternate was a teacher. The third person was education-related in some way. Maybe I've forgotten exactly what, but there was some teacher connection to it, as I recall. I don't believe that's the case. Well, we'll have to check on the record again. But the teacher was the first alternate and was struck by the defendant. If the court has no other questions, I'm prepared to submit the case. What would you envision at an evidentiary hearing? What would you do? I believe an evidentiary hearing here would be useless. We have the entire transcript of the jury selection. But the question is, was the prosecutor's reason pretextual? So how might one go about figuring out whether the prosecutor's reason was pretextual? It's a state-of-mind thing on the part of the prosecutor. If you call the prosecutor at an evidentiary hearing now and say, why did you allow that teacher on the jury 10 years ago, he's likely to say, I don't remember. But even if he did remember, he would certainly say it wouldn't be for, you know, it wasn't pretextual. I had a good reason to do it. Just looking at the notes, which we can do, she had prior criminal jury experience, which is a positive for jurors. In general, we've done this. Certainly there have been evidentiary hearings in Batson cases fairly frequently and at longer stretches of time than this one. I mean, I share your sense that it may not be the most useful thing in the world, but we do do it when we have a hole in the record. In this case, it would be appropriate first because the state court developed a factual record, and we have that factual record before us. The defendant wasn't denied any opportunity to develop more facts at the trial court level. But we do have a contradiction between what the prosecutor said he was doing and what he did. So it seems to me that we don't have an explanation for that discrepancy. There is a discrepancy, and you take that into account when you're evaluating the reasonableness of crediting the prosecutor's response. The court of appeal did that, the district court did that, and they all found it was still reasonable, even if one teacher made it onto the jury. There were other teachers who were struck from the jury. But you don't have to hold an evidentiary hearing to find out the exact answer to that question. Factor it into the equation. Is it still reasonable? Yes, it's still reasonable. If there are no other questions, I'm prepared to submit. Thank you, counsel. Mr. Simon, we'll give you one minute for rebuttal, and we'll take our morning break. Just to set the record straight, this is what the magistrate stated with respect to the question of whether my client waived his right explanation for the strike, that the trial judge did not permit Love to present evidence that would have allowed the judge to draw an inference that discrimination occurred. And that's ER 25, page 25. So I submit that the trial judge's ruling and the court of appeals' ruling were contrary with the holdings of the district court. Specifically, Miller L. The court of appeals said the comparative analysis test was not suitable. It rejected the comparative analysis test. And this is contrary exactly to what Miller L. said. The court held there that comparative analysis test is a valuable tool to determine if a strike was racially motivated. If there are any questions, I submit it. Thank you, counsel. The case just argued is submitted. We appreciate the arguments of both counsel. And we will take a short recess before completing our morning calendar. Thank you.
judges: Graber, Berzon, Wilken